# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Michael T. Mason | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8059 | **DATE** | 10/21/2003 |
| **CASE TITLE** | Rumphol vs. Barnhart | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  For the reasons stated in the attached Memorandum Opinion and Order, plaintiff's motion for summary judgment [20-1] or for remand to the Social Security Administration [20-2] is denied and defendant's motion for summary judgment [30-1] is granted. The Clerk of Court is directed to enter judgment in favor of defendant, Jo Anne B. Barnhart, Commissioner of Social Security, and against plaintiff, Gwendolyn Rumphol. All other pending motions are moot. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | 2 | |
| | No notices required. | | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | | OCT 2 2 2003 | |
| | Docketing to mail notices. | | | date docketed | |
| ✓ | Mail AO 450 form. | | | | **Document Number** |
| | Copy to judge/magistrate judge. | | | docketing deputy initials | |
| | | | | 10/21/2003 | 34 |
| KF | courtroom deputy's initials | | | date mailed notice | |
| | | | | KF | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

OCT 2 2 2003

GWENDOLYN RUMPHOL,          )
         Plaintiff,          )
                    )
         v.          )          01 C 8059
                    )
JO ANNE B. BARNHART,          )
Commissioner of Social Security, )
                    )
         Defendant,          )

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

      The plaintiff, Gwendolyn Rumphol ("Rumphol"), has brought a motion for summary judgment seeking judicial review of the final decision of defendant Barnhart, who denied Rumphol's claim for disability insurance benefits ("DIB") under the Social Security Act, 42 U.S.C. § 416(i). Defendant Barnhart has filed a cross motion for summary judgment asking that we uphold the decision of the Administrative Law Judge ("ALJ") who originally decided the case.

      We have jurisdiction to hear this matter pursuant to 42 U.S.C. § 405(g) which grants federal courts the power to review the Social Security Commissioner's final decisions. For the foregoing reasons we affirm the decision of the ALJ and further deny Rumphol's request to remand the matter for supplemental hearings.

## Procedural History

      Rumphol was awarded Title XVI Supplemental Security Income ("SSI") benefits on March 27, 1997. (R. 449-56). ALJ Angelo Nicchita approved the SSI

34

application and determined the onset date of disability as May 11, 1995. *Id.*

Rumphol also filed an application for DIB on March 19, 1996 (R. 480-83) asking

for a period of disability dating back to March 10, 1984[1]. Rumphol's last date

insured for purposes of determining DIB eligibility lapsed September 30, 1984.

(R. 18). Her claim was denied initially and again upon reconsideration. (R. 478-

79). Rumphol subsequently filed a request for a hearing on December 19, 1996.

*Id.* On July 29, 1999, ALJ Lovert F. Bassett ("Bassett") held a hearing on the

denial of her claim for DIB. (R. 839-69). Both Rumphol and her husband

testified during the hearing. *Id.* Following the hearing, ALJ Bassett issued a

written opinion denying Rumphol's DIB claim on December 13, 1999. (R. 14-26).

In his opinion, ALJ Bassett applied the five step sequential evaluation

process required under 20 C.F.R. 404.1520 and 416.920. (R. 18-24). He found

Rumphol not disabled as 1) her "impairment neither met the requirements nor

equaled the level of severity contemplated for any impairment listed in Appendix

1 to Subpart P, Regulations No. 4," 2) Rumphol had the residual functional

capacity ("RFC") "to perform the full range of unskilled sedentary work as of her

---

[1] The plaintiff had filed a prior application for Title II disability benefits on November 20, 1992 alleging a period of disability dating back to March 10, 1984. (R. 18, 457). That application was initially denied on February 24, 1993, denied upon reconsideration on April 15, 1993, and was not appealed. (R. 462-77). The March 19, 1996 application at issue was also filed with an onset date of March 10, 1984 . (R. 497).

Just prior to the hearing, on April 28, 1999, plaintiff's attorney at that time wrote a letter to the court asking for an on-the-record decision with regards to the March 19, 1996 application. In this letter, plaintiff's attorney requested Title II disability "retroactive to March 24, 1984". (R. 826). Consequently, in his decision, the ALJ stated that Rumphol "alleges disability since March 24, 1984" which conflicts with the onset date in the current application. (R. 18). However, his opinion makes clear that he carefully considered all evidence starting with March 10, 1984. For the purposes of review, this court will treat the onset date as March 10, 1984, the earliest possible onset date of disability.

last date insured (20 C.F.R. 404.1267)," and 3) Medical-Vocational Rule 201.28 "applies and directs a finding of 'not disabled'." (R. 25).

Rumphol appealed the decision and the Appeals Council denied review on September 28, 2001, making the ALJ's decision the final decision of the Commissioner of Social Security. See Zurawski v. Halter, 245 F.3d 881 (7th Cir. 2001). Rumphol now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## Plaintiff's Testimony

On March 10, 1984, Rumphol was injured in an automobile accident. (R. 18). At the time of the accident, she was thirty years old. Born on August 8, 1953, she turned thirty-one prior to her last date insured. (R. 457). Rumphol has a high school education and four years of college. Before the accident in March, she had earned $50.00 per week working as a church secretary for her husband's ministry. (R. 19). After the accident, though unpaid, she continued her work as a secretary through December, 1985. (R. 862, 19). For the next two years, she remained unemployed.

From December, 1987 through June, 1988, Rumphol worked at a print shop owned by family friends. (R. 842, 850). Her responsibilities included general janitorial duties and occasional large document collation. (R. 843). She worked approximately 20 hours per week on a flexible schedule at $5 an hour. (R. 844). At the hearing, Rumphol testified that her husband assisted with the vacuuming and mopping and also emptied the trash. She cleaned the restrooms, dusted the office, and helped with the collation about twice a month

3

without her husband's assistance. (R. 843). She left that job when they moved to Kansas in June, 1988.

After moving to Kansas, Rumphol testified that she remained unemployed for approximately two months. (R. 845). Towards the end of August, 1988 she began babysitting two children from her home. She cared for a two month old girl and the infant's six year old brother five days a week. She was responsible for the infant for eight hours a day and watched the six year old for half an hour before he left for school and another half hour after he returned. As a babysitter, Rumphol earned $50-$60 per week. The job continued until May, 1989 when the children's schoolteacher mother no longer needed Rumphol's services. She has not been employed since that time.

With regards to her physical condition, Rumphol testified that since the accident in March, 1984, she has suffered from back pain and muscle spasm headaches. (R. 845). According to her testimony, stretching or lifting would cause the muscles in her upper back and neck to tighten and spasm. (R. 849). These muscle spasms in turn resulted in headaches that caused her to be bedridden for a couple of days. (R. 849). She indicated that after the accident, she initially suffered from such headaches once a month, but now suffers from these headaches once a week. Id. Rumphol further testified that her condition "has gradually worsened each year." (R. 854).

Rumphol indicated that, while employed at the print shop, lifting or reaching caused pain in her back. Therefore, while she was capable of dusting, cleaning sinks and toilets, and cleaning mirrors if she did not have to reach too

4

far, she could not vacuum, mop, empty trash, or clean baseboards. (R. 850). She missed a janitorial shift due to pain once every two weeks on average. (R. 851).

Rumphol testified to similar problems while babysitting. She states that lifting the infant was difficult and caused pain. (R. 848). She further indicated that she missed a day of babysitting approximately once every six weeks due to headaches. (R. 858). Rumphol also stated that she suffered from occasional headaches while caring for the children, forcing her to call their grandmother to come over and care for the children. *Id.*

During the relevant time period, Rumphol reported that she could only stand or sit for half an hour on a bad day and one and a half hours on a good day. (R. 864). She further testified that on a good day she could walk one to two miles, lift a gallon of milk, and retrieve a coin from the floor but that on a bad day, she could only walk one block, could not lift anything, and would have difficulty retrieving a coin from the floor.

At the ALJ's hearing, Reverend Steven J. Rumphol, plaintiff's husband, testified that Rumphol suffered two periods of prolonged pain after the accident during which she was bedridden. (R. 867). Rev. Rumphol stated that each of the two periods lasted for three weeks to a month. *Id.* He further indicated that Rumphol could carry on small duties and that, though limited, she could walk. *Id.* He stated that friends from church volunteered to help with the housework and the children. (R. 868). Rumphol's husband also testified that prior to the accident, Rumphol was "energetic and very much of a go-getter." (R. 869). After

5

the accident occurred she suffered from pain and he stated that "she's being way too generous for how much she could do." (R. 868).

Rumphol makes no allegations of any mental impairments dating back to 1984. (R. 841). She also makes no claims of pain or impairment prior to the March 10, 1984 automobile accident. Her DIB claim rests solely on her physical condition from March through September of 1984.

## Plaintiff's Medical Examinations

The administrative record contains an extensive and detailed medical history for this plaintiff. Rumphol received treatment at the Lakeview Medical Center from March 10, 1984, through January 27, 1987. Rumphol underwent physical therapy at the Community Memorial Hospital from September 17, 1984 to October 5, 1984, (R. 609-11), and again from November, 1985 through 1992. (R. 603). The plaintiff also sought treatment at the Blue Rapids Medical Clinic from August 23, 1988 through November 28, 1992. Additionally, Rumphol has medical records from the Community Memorial Hospital from February 21, 1990 through July 8, 1992 and May 6, 1995 through July 5, 1995 and from Elmhurst Memorial Hospital from January 7, 1994 through January 10, 1996. Beyond this extensive medical history, the administrative record also includes nine medical reports from various doctors and two RFC assessments.

Lakeview Medical Clinic conducted Rumphol's initial examination after the March 10, 1984 accident. The treating physician determined that Rumphol had suffered a rotator cuff injury of the right shoulder and cervical and thoracic strain and sprain. The physician ruled out bony involvement for both injuries. One line

6

in the physician's handwritten notes also stated that the plaintiff was totally disabled though the context for that statement is not entirely clear. The physician recommended a shoulder immobilizer.

On March 13, 1984, Rumphol went to the emergency room at St. Michael's Hospital in Minnesota. (R. 614-16). The treating physician on that day found generalized tenderness in the shoulder with no significant motor vascular impairment and diagnosed a ligamentous injury and contusion of the right shoulder. (R. 615). An x-ray of her right shoulder showed no evidence of fracture or dislocation, the shoulder girdle was intact, and the articular surfaces were within normal limits. (R. 616). An x-ray of Rumphol's spine indicated a wedge deformity of D-12. *Id.* The radiologist determined that the deformity was minimal with no widening of the paraspinal shadows and that the deformity was based on an old trauma. *Id.* By March 22, 1984, the treating physician's notes indicated decreased soreness and an increase in her range of motion. (R. 626-27).

Rumphol continued returning for check ups through May 29, 1984. (R. 626-27). The medical records from the end of March through the end of May indicate that the physician prescribed exercises to increase her range of motion. By May 20, 1984, the physician noted that Rumphol had good range of motion in her shoulder. (R. 625-26).

Rumphol's returned to the Lakeview Medical Clinic on September 13, 1984 complaining of thoracic pain. (R. 626). The doctor diagnosed her with thoracic wall strain and muscle spasms and prescribed physical therapy on

7

September 17, 1984. *Id.* According to the medical records, the muscle spasms decreased and Rumphol indicated that her back was feeling better by October 4, 1984. (R. 625).

The medical record contains no further mention of back pain until July 26, 1985 though Rumphol had been treated for other, unrelated conditions between October, 1984 and July, 1985[2]. *Id.* On July 26, 1985, Rumphol complained of pain in the thoracic area with numbness and tingling in the right hand. She also complained of migraine headaches that had increased in frequency since the automobile accident in March, 1984. *Id.* Her medical records indicate repeat visits to the Lakeview Medical Clinic for thoracic spine pain from October 28, 1995, to November, 1995. (R. 624).

On November 22, 1985, Rumphol was hospitalized at St. Michael's Hospital for six days for intensive physical and osteopathic manipulative therapy. (R. 603-05). She complained of acute back and neck pain resulting from an injury sustained while lifting an unspecified object three to four weeks prior to admission. (R. 603). X-rays of Rumphol's thoracic spine showed no acute changes since her March, 1984 x-rays. *Id.* X-rays of her cervical spine, however, revealed a "marked disc space narrowing at the C-4, C-5 level with a suggestion of bony fusion in the posterior portion of the vertebral bodies." *Id.*

Rumphol was hospitalized again on December 6, 1985 for pain in the cervical-thoracic spine. (R. 595). When she was discharged on December 23,

---

[2] The unrelated conditions include an allergic reaction to medication, sinusitis and varicose veins.

8

1985, Dr. K.J. Olson, the attending physician, "vigorously encouraged [Rumphol] to increase her daily activities and she responded well to a slow progression." (R. 595). From that point on, the administrative record contains extensive physical therapy reports and other medical records that track the progress of her condition.

The administrative record also contains Dr. Lawrence J. Frazin's medical report from August 19, 1987. (R. 628-30). Dr. Frazin's report indicated that after the accident, Rumphol complained of stiffness and pain in her shoulder, neck, and upper back. (R. 628). She later complained of some numbness in the right arm which was totally alleviated. *Id.* Towards the end of 1985, she was hospitalized twice and required extensive physical therapy. *Id.* Dr. Frazin also noted that she had about three flare ups of pain per year that took a few weeks to a few months to resolve. *Id.* The flare ups involved pain largely in the neck, upper back, and shoulder areas. *Id.*

Dr. Frazin's examination of the plaintiff in August, 1997, showed that Rumphol was in no distress. (R. 628). She had a diffuse tenderness in the upper shoulders and neck, but no muscle spasms. *Id.* He noted that Rumphol's range of motion through the joints and upper extremities was normal with no evidence of focal weakness.

Dr. Frazin further stated that Rumphol did not suffer from migraine headaches as trauma does not induce migraines. (R. 629). He noted that she suffered from muscular pains referred into the occipital and head area. *Id.* Dr. Frazin concluded that Rumphol has a "permanent residual from a cervical flexion

extension injury directly related to her accident of March 10, 1984." *Id.*

During the hearing before the ALJ, the plaintiff conceded that there was no medical source statement supporting a finding of disability as of her alleged onset date. (R. 22, 842).

## Standard of Review

In reviewing the final decision of the Commissioner, this court must accept the ALJ's findings of fact as conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). The standard of substantial evidence "requires no more than 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1972)). Therefore, if a reasonable mind could reach the same decision as the Commissioner based on the evidence of record, this court must affirm the decision of the Commissioner unless there has been an error of law. *Veal v. Bowen*, 833 F. 2d 693, 696 (7th Cir. 1987). Where the Commissioner's decision was supported by substantial evidence and reached using the correct legal standards, the Commissioner's decision must be upheld. *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000).

Furthermore, "[w]here conflicting evidence allows reasonable minds to differ as to whether the claimant is disabled, the responsibility for the decision falls on the [Commissioner or ALJ]," not the courts. *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). This court may not re-weigh the evidence, re-evaluate the facts, or substitute its own judgment in determining whether a claimant is or is not disabled. *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994). Concomitantly,

10

this court may not reconsider an ALJ's credibility determinations. *Prince v. Sullivan*, 933 F.2d 598, 601-02 (7th Cir. 1991). Thus, a claimant bears the burden of proof to show that, based upon the record as a whole, no reasonable person could have found as did the Commissioner. *Rucker v. Shalala*, 894 F. Supp. 1209, 1213-14 (S.D. Ind. 1995).

## Legal Analysis

To claim DIB, the plaintiff must show that she was disabled on or before her last date insured. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997). The statute defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

In determining whether Rumphol suffered from a disability as defined in the Social Security Act, the ALJ conducted the standard five-step inquiry. *See* 20 C.F.R. § 404.1520. The five-step inquiry required the ALJ to evaluate, in sequence: (1) whether the claimant is currently [un]employed; (2) whether the claimant has an impairment or combination of impairments of qualifying severity; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner], *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) if not, whether the claimant can perform her past relevant work given the claimant's RFC; and (5) whether the claimant, considering her age, education, or work experience, is capable of performing work in the national economy. *E.g., Clifford*

11

v. Apfel, 227 F.3d 863, 838 (7th Cir. 2000), Knight v. Chater, 55 F.3d 309, 313 (7th Cir.1995).

"An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." Zalewski v. Heckler, 760 F.2d 160, 162 n. 2 (7th Cir.1985) (citation omitted). The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner. Knight, 55 F.3d at 313.

Because the plaintiff must establish that she was disabled on or before her last date insured, Stevenson, 105 F.3d at 1154, the relevant time period ends on September 30, 1984. (R. 18). Any finding of disability after that date would be meaningless for purposes of this claim. Furthermore, the plaintiff alleges an onset date shortly after she suffered an automobile accident on March 10, 1994. Consequently, the relevant period for a determination is from March 10, 1984 through September 30, 1984.

During this time period, at step one of the sequential analysis the ALJ found that though the plaintiff had continued to work as a secretary for her husband's ministry after her alleged onset date, her earnings fell below the level required for establishing the existence of substantial gainful activity. (R. 24). At the second step the ALJ determined that, due to the plaintiff's RFC limitations, the plaintiff had an impairment of qualifying severity. Id. Neither step 1 nor step 2 of the sequential analysis are at issue in this case.

The plaintiff's arguments focus on the ALJ's analysis at steps 3-5.

Specifically, the plaintiff argues that the ALJ's determination under step 3 was not supported by substantial evidence and that he made an error of law by failing to adhere to the requirements of SSR 83-20. The plaintiff further contends that the ALJ made an inappropriate determination regarding the plaintiff's RFC because his findings on the plaintiff's credibility were not supported by substantial evidence and he did not adequately consider relevant medical evidence. Finally, the plaintiff argues that the flawed RFC findings led to an inappropriate application of Medical-Vocational Rule 201.28 at step 5 of the analysis. Each of these arguments fails and will be addressed in turn.

**Step 3 Analysis**

Step 3 of the analysis requires that the ALJ determine whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner], *see* 20 C.F.R. § 404, Subpt. P, App. 1. The ALJ found that under the relevant Listing, 1.05C under 20 C.F.R. § 404, Subpt. P, App. 1, the evidence failed to show that the plaintiff's impairment met the required standard. Listing 1.05C, the standard in effect at that time, indicates that the plaintiff must show that she has a vertebrogenic disorder

> (e.g., herniated nucleus puplosus, spinal stenosis) with the following persisting for at least three months despite prescribed therapy and expected to last 12 months. With both 1 and 2: 1. Pain, muscle spasm, and significant limitation of motion in the spine; and 2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory reflex loss.

20 C.F.R. Pt. 404, Sbpt. P, App. 1, § 1.05C (1999). The ALJ found that the plaintiff did not have a "back impairment that resulted in significant motor loss

13

with muscle weakness, and sensory and reflex loss during the period at issue." (R. 20). The ALJ further found that "[e]ven considering the combination of the claimant's impairments, the level of severity does not equal that contemplated for any of the Appendix 1 conditions." *Id.* Therefore, he determined that disability could not be established at the third step of the sequential analysis. *Id.*

The plaintiff argues that this finding is not supported by substantial evidence because the ALJ did not adequately address the evidence indicating cervicular fusion. Plaintiffs cites a March 13, 1984 x-ray that showed a wedge deformity at D-12 and a November 1985 x-ray that showed possible cervical fusion with a diagnosis of "acute cervical and thoracic strain." (R. 617-23). Plaintiff also cites a Feb. 3, 1993 examination as supporting her argument.

Although the ALJ's decision must be supported by substantial evidence "he need not evaluate in writing every piece of evidence in the record." *Davis v. Chater*, 952 F. Supp. 561, 656 (N.D. Ill. 1996). The ALJ need not spell out every step in his reasoning, provided that his analysis can be decoded. *Brown v. Bowen*, 847 F.2d 342, 346 (7th Cir.1988). Additionally, to establish that the ALJ's decision was not supported by substantial evidence, the plaintiff must show that no reasonable person could have reached the same conclusion as did the ALJ when evaluating the record as a whole. *Diaz*, 55 F.3d at 305.

Contrary to the plaintiff's assertion, the ALJ did evaluate the relevant medical evidence in this case and his determination was supported by substantial evidence. The ALJ specifically addressed the March 1984 x-ray stating that "x-rays of the dorsal spine showed a wedge deformity that was described as

14

minimal and thought to be related to an old trauma. Also there was no significant motor vascular impairment." (R. 21). In addition, the ALJ's opinion includes a detailed consideration and discussion of the medical records from an examination that occurred three days after the accident; records from the Lakeview Medical Clinic in Sauk Centre, Minnesota that run from May 1984 through October 1984; and an examination report dated August 19, 1987 that contains history and clinical examination results. The ALJ stated that the 1987 report "provides a good perspective to the claimant's 1984 condition." (R. 21-22). The 1987 report stated that Dr. Lawrence Frazin had diagnosed residuals of a chronic cervical flexion-extension injury. Dr. Frazin further opined that the plaintiff did not suffer from depression or migraine headaches and that the soft tissue condition would not lead to arthritis. (R. 22).

With regards to the 1985 and 1992 x-rays, the ALJ also stated that according to the plaintiff's own testimony, her medical condition consisting of a herniated cervical disc and fused cervical vertebrae was a condition that had steadily worsened over the years. (R. 20). He noted that the progressive worsening of the condition was consistent with the finding of SSI disability in the March 27, 1997 decision which determined an onset date of May 11, 1995. Lastly, the February 3, 1993 examination is not relevant to this case because plaintiff has failed to show how an examination by a doctor over eight years after her last date insured could have any bearing on her condition in 1984. The ALJ's decision was based on evidence sufficient to allow a reasonable person to find that the plaintiff had not met the requirements for a disabling impairment under

15

Listing 1.05C and will not be disturbed.

The plaintiff additionally argues that the ALJ's findings under Listing 1.05C reflect an error of law as SSR 83-20 required that the ALJ determine the onset date by obtaining the testimony of a medical expert before applying the standards under 1.05C. The purpose of SSR 83-20 is "[t]o state the policy and describe the relevant evidence to be considered when establishing the onset date of disability under the provisions of [T]itles II and XVI of the Social Security Act (the Act) and implementing regulations." Plaintiff was found disabled as of May 11, 1995, a fixed point in time, for purposes of SSI benefits. The plaintiff now seeks to stretch that date to a more remote period in time which invokes SSR 83-20 (R. 18).

The introduction to SSR 83-20 states that "the only instances when the specific date of onset must be separately determined for a [T]itle XVI case is when the onset is subsequent to the date of filing or when it is necessary to determine whether the duration requirement is met." In this case, the onset date is not subsequent to the date of filing and the duration of the disability is not in question. The ALJ found that the plaintiff was not disabled at any time between her putative onset date and her last date insured. (R. 18). Therefore the relevance of SSR 83-20 is limited.

Plaintiff contends that the ALJ was required to determine the relevant insured period before examining the evidence regarding the plaintiff's disability. She further contends that in an examination dated November 22, 1985, the reviewing radiologist opined that the wedge deformity found in the x-ray could be

16

congenital. (R. 623). However, the radiologist who reviewed the x-rays taken March 13, 1984, three days after the accident, stated that he "would assume that the minimal deformity is on the basis of old trauma." (R. 627).

The plaintiff also points to the medical report dated August 19, 1987 in which the plaintiff alleges that Dr. Lawrence Frazin indicated her injuries were secondary to the automobile accident. Contrary to the plaintiff's assertion, Dr. Frazin's report only stated that "Mrs. Rumphol has permanent residual from a cervical flexion extension injury directly related to her accident of March 10, 1984." R. 629. On these grounds, the plaintiff contends that she suffered from a disability of nontraumatic or progressive origin.

Despite the plaintiff's attempt to present a disability of nontraumatic or progressive origin, the plaintiff makes no allegations regarding pain or impairments before the accident. Furthermore, all of the medical evidence supports the proposition that the March 10, 1984 automobile accident was the triggering event for the medical conditions that underlie this claim. As Dr. Frazin noted in his report, the plaintiff's back problems were directly related to the automobile accident. That accident establishes a traumatic origin obviating the need for any inferences to establish an onset date under SSR 83-20.

Therefore, contrary to the plaintiff's assertions, the ALJ was not "playing doctor" because his onset date determination did have a legitimate medical basis. In addition, the record did not require a medical expert to deduce the impact of the March, 1984 automobile on the probable effect of the possible congenital deformity as the medical record fully documented that impact through detailed and

complete medical records dating from March 10, 1984 through 1996. The onset

date could be fully deduced from the available medical evidence.

Moreover, even if the plaintiff could claim that she suffered from a disability

of nontraumatic or progressive origin for purposes of DIB, the ALJ would still not

have been required to obtain medical testimony before making a finding regarding

her impairment under Listing 1.05C. SSR 83-20 only recommends the testimony

of a medical expert in the cases where

> it may be possible, based on the medical evidence to reasonably
> infer that the onset of a disabling impairment(s) occurred some time
> prior to the date of the first recorded medical examination, e.g., the
> date the claimant stopped working. How long the disease may be
> determined to have existed at a disabling level of severity depends
> on an informed judgment of the facts in the particular case. This
> judgment, however, must have a legitimate medical basis. At the
> hearing, the administrative law judge (ALJ) should call on the
> services of a medical advisor when onset must be inferred.

In this case, no evidence exists to suggest that the wedge deformity constituted a

disabling impairment that could have had an onset date at some time prior to the

March, 1984 accident. The plaintiff does not allege any pain or impairments prior

to March 10, 1984. Furthermore, the ALJ was in a position to make a fully

informed judgment of the facts in this case based upon the availability of an

extensive and complete medical history from which to make his determinations.

The plaintiff's medical history comprises a significant portion of the 870

page administrative record. SSR 83-20 does not require the opinion of a medical

expert to determine every onset date, but only in those cases where establishing

an onset date requires a legitimate medical basis not otherwise available.

Therefore, SSR 83-20 did not require the ALJ to obtain testimony from a medical

expert because the medical history before him was already complete. *See Henderson ex rel. Henderson v. Apfel*, 179 F.3d 507, 513 (7th Cir. 1999).

Finally, the plaintiff contends that "since SSR 83-20 does not require a finding of listing severity before onset date can be established, it was incumbent upon the ALJ to consider evidence generated subsequent to the date last insured." (Pl.'s Reply Mem. at 2). This argument has no merit.

The ALJ did consider a 1987 medical report produced by Dr. Lawrence Frazin as the report provided a good perspective on the plaintiff's 1984 accident. (R. 22). The rest of the medical evidence generated from 1985 through 1996 would have had a bearing on plaintiff's SSI claim but has no relevance to a determination of disability for the purposes of DIB benefits in 1984. SSR 83-20 explicitly states that, "[a] [T]itle II worker cannot be found disabled under the Act unless insured status is also met at a time when the evidence establishes the presence of a disabling condition(s)."

A large portion of the medical evidence pertains to the plaintiff's condition from November, 1985, when the plaintiff's condition apparently worsened after she sustained an injury while lifting some object, through 1996. This entire eleven year period falls outside the relevant time period for her DIB claim and did not require consideration.

**Step 4 Analysis**

Plaintiff also asserts that the ALJ made an improper finding with regards to her credibility under SSR 96-7P and the pain she suffered under SSR 96-8P by discounting medical evidence of a condition that could have reasonably produced

19

the complaints alleged. Plaintiff contends that the ALJ placed undue reliance upon her work activities after the accident.

The ALJ found that the plaintiff's impairments only kept her from standing and/or walking for more than a total of two hours in an eight hour workday and lifting more than ten pounds occasionally and five pounds frequently. (R. 20). In his opinion, the ALJ states that he made his determination after "carefully considering the entire record, including the claimant's complaints of disabling symptoms and limitations." (R. 20).

The ALJ also states that in her testimony, plaintiff conceded that her condition had steadily worsened over the years. (R. 20, 854). She reported that after the accident she could stand or sit for half an hour on a bad day and one and a half hours on a good day. (R. 20, 864). Plaintiff further testified that on a good day she could walk one to two miles, lift a gallon of milk, and retrieve a coin from the floor, but that on a bad day, she could only walk one block, could not lift anything, and would have difficulty retrieving a coin from the floor. *Id.* Plaintiff's husband also testified that, after the accident, plaintiff was bedridden for one month. He stated that he took over some of the household duties with help from friends.

In assessing the credibility of those statements, the ALJ first points to the plaintiff's work history after the accident. He found that, though the condition had progressively worsened over the years, three and a half years after the accident, the plaintiff still had the vigor to work as a part-time janitor. The ALJ further found that the contemporaneous medical evidence did not support either plaintiff's or her

husband's allegations of disabling symptoms and limitations prior to her last date insured. (R. 21). Medical reports from 1984 indicate a midthorax-cervical sprain consistent with a soft tissue injury.

As the ALJ noted, medical records from the Lakeview Medical Clinic indicated that by May 29, 1984, plaintiff told her doctor that her right shoulder was better. (R. 22). In September, 1984, plaintiff complained of thoracic pain diagnosed as a sprain. Her doctor noted improvement with medication and physical therapy by October 4, 1984 when plaintiff reported that her back was better. *Id.* In his written opinion, the ALJ reviewed the medical notes from 1984 as well as Dr. Frazin's 1987 report and concluded "a reasonable inference from the available evidence is that the claimant was certainly able to perform sedentary work as of September 30, 1984." (R. 22). He further notes that "this finding is consistent with the claimant's admission that her condition progressively worsened with time, leading to the March 27, 1997 decision . . . finding [the plaintiff disabled] as of May 11, 1995, but not before."

The ALJ's assessment of the plaintiff's credibility meets the requirements under SSR 96-7P. The ALJ placed primary weight on the medical records from 1984 which indicated a soft tissue injury with no bony involvement. (R. 627). This medical evidence regarding an injury to the plaintiff's shoulder, neck and back does not reasonably support a finding that the plaintiff was unable to perform sedentary work. Plaintiff points to Dr. Frazin's report which indicated that she suffered three flare-ups of pain per year after her accident. (R. 628). However, that same report indicated that the flare-ups involved a soft tissue injury that

21

caused pain and stiffness in her shoulder, back, and neck. *Id.* The pain was treated by medication and physical therapy and resolved within three weeks to three months. *Id.* The mere existence of these flare-ups does not support the proposition that the plaintiff was completely disabled for their duration.

Furthermore, in accordance with section 2 of SSR 967P, the ALJ found the "existence of a medically determinable physical impairment that could reasonably be expected to produce" some symptoms of pain. His opinion does not state that the plaintiff was completely pain free. Instead, he found that her impairments were severe under step 2 of the sequential analysis. (R. 19). However, based upon the medical evidence, the ALJ concluded that the plaintiff did not meet the requirements of Listing 1.05C. Therefore, at step 4 of the analysis the ALJ made "a finding about the credibility of the individual's statements about the symptom(s) and its functional effects," which was consistent with the extensive medical evidence as required under SSR 96-7P(1). He concluded that her statements regarding her impairments were inconsistent with the extensive medical records and her continued work activities after the accident as a secretary to her husband's ministry, a janitor, and a baby-sitter. The ALJ properly considered all of the evidence before him and did not make an error of law. We will not disturb his credibility determinations. See *Prince*, 933 F.2d at 601-02.

The ALJ also appropriately established plaintiff's RFC under SSR 96-8P(5) which states that "RFC is not the least an individual can do despite his or her limitations or restrictions, but the most." Furthermore, "[t]he RFC assessment considers only functional limitations and restrictions that result from an individual's

22

medically determinable impairment or combination of impairments, including the impact of any related symptoms." SSR 96-8P(2). Under this standard, in making the function-by-function assessments under 20 CFR 404.1545 and 416.945, the ALJ explicitly found that the plaintiff's impairments only precluded her "from standing and/or walking for more than a total of two hours in an eight hour workday and lifting more than ten pounds occasionally or five pounds frequently." (R. 20).

In this case, the ALJ did not merely conclude that she was capable of the full range of sedentary work. As stated before, the ALJ made a careful consideration of the full record including medical evidence, the plaintiff's testimony, and her work activities after the accident in reaching his conclusions. Therefore, the ALJ's RFC determination is supported by substantial evidence and contains no error of law.

**Step 5 Analysis**

Plaintiff's last argument for reversal and remand asserts that the ALJ's erroneous RFC finding led to an inappropriate application of the Grid and denial of her DIB benefits. The plaintiff claims that the ALJ failed to properly evaluate the plaintiff's and her husband's subjective testimony regarding her pain. (Plaintiff's Reply Memorandum, 7). She also claims that because the ALJ found her unable to perform her past relevant work and because she suffered from non-exertional impairments, the ALJ was required to obtain the testimony of a vocational expert.

The ALJ did not find plaintiff unable to perform her past relevant work. In step 1 of the sequential analysis, he found that she had no past relevant work

because that work was not performed at the substantial gainful activity income level required under 20 C.F.R. § 404.1574. (R. 19). In addition, for all the reasons stated in the preceding portions of this review, the ALJ made an appropriate finding at steps 3 and 4 of the sequential analysis regarding the plaintiff's impairments and the objective as well as subjective evidence regarding her RFC. Therefore, the ALJ appropriately found that plaintiff had the RFC for a full range of sedentary work under Rule 201.28 and he was not required to call a Vocational Expert.

### Conclusion

We find the ALJ's decision is supported by substantial evidence and does not contain any errors of law. The ALJ's decision is therefore AFFIRMED and the plaintiff's request for remand DENIED. It is so ordered.

**ENTER:**

Michael T. Mason
United States Magistrate Judge

**Dated: October 21, 2003**